IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE:    C. R. BARD, INC.
            PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION, MDL 2187

_____

THIS DOCUMENT RELATES TO:
*Angelyne Mendoza v. C. R. Bard, Inc.*        *Civil Action No. 2:13-cv-14766*

**MEMORANDUM OPINION & ORDER**

Pending before the court is defendant C. R. Bard, Inc.'s ("Bard") Motion to Dismiss [Docket 25]. For the reasons stated below, Bard's Motion to Dismiss is **GRANTED**.

**I.    Background**

The instant case is one of over 70,000 cases assigned to me by the Judicial Panel on Multidistrict Litigation concerning alleged defects in transvaginal surgical mesh used to treat stress urinary incontinence and pelvic organ prolapse. Managing multidistrict litigation ("MDL") requires the court to streamline certain litigation procedures in order to improve efficiency for the parties and the court. Some of these management techniques simplify the parties' responsibilities. For example, pursuant to Pretrial Order # 131, where a plaintiff's case is chosen for individual discovery in Wave 3, the plaintiff was required to submit a full Plaintiff Fact Sheet ("PFS") to Bard by August 29, 2014. (Pretrial Order # 131 [Docket 7] ¶ B.1.a). If the PFS is incomplete, Bard has the option to file a motion for entry of an order to show cause as to why the case should not be dismissed with prejudice. (*Id.* ¶ B.1.c).

Bard received an incomplete PFS on August 29, 2014, shortly after learning that the plaintiff in this case, Ms. Mendoza, had passed away in April. Plaintiff's counsel explained that

Hector Mendoza, the husband of Ms. Mendoza, had been appointed as representative of his late wife's estate and would continue the lawsuit on Ms. Mendoza's behalf. But weeks later, after Bard requested a completed PFS from plaintiff's counsel, plaintiff's counsel explained that they were having trouble contacting Mr. Mendoza. Citing these communication difficulties, plaintiff's counsel moved to withdraw on September 25, 2014. (Mot. to Withdraw as Counsel of Record [Docket 13]). In its opposition to the motion to withdraw, Bard moved for the court to order the plaintiff to show cause as to why the case should not be dismissed for failure to provide a complete PFS. (Bard's Resp. in Opp'n to Mot. to Withdraw as Counsel and Mot. to Show Cause [Docket 15]).

After giving Mr. Mendoza two weeks to respond to the motion to withdraw, I granted plaintiff's counsel leave from the case. At the same time, I granted Bard's motion to show cause. I ordered as follows:

> The plaintiff's next of kin has **30 days** to show cause as to why this case should not be dismissed with prejudice as requested by defendant. To show cause under this order, the next of kin—either through a new attorney or by proceeding *pro se*—must enter an appearance on the record and submit written argument to this court by **March 4, 2015**. Failure to do so will result in dismissal with prejudice upon motion by the defendant.

(Order [Docket 23], at 3). Mr. Mendoza did not comply with this Order, nor has he made any other effort to continue prosecuting this case. On March 13, 2015, Bard moved to dismiss the case with prejudice.

## II. Legal Standard

Federal Rule of Civil Procedure 37(b)(2) allows a court to sanction a party for failing to comply with discovery orders. The dismissal of an action is an example of a possible sanction under this rule. Before employing this severe sanction, however, a court must balance the competing interests of the "court's desire to enforce its discovery orders," on the one hand, and

2

"the [plaintiff's] rights to a trial by jury and a fair day in court," on the other. *Mut. Fed. Sav. & Loan v. Richards & Assocs.*, 872 F.2d 88, 92 (4th Cir. 1989). The Fourth Circuit has identified four factors for the court to consider when confronting a motion to dismiss under Rule 37:

> (1) Whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

*Id.* (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503–06 (4th Cir. 1977)).

In applying these factors to the case at bar, I must be particularly cognizant of the realities of multidistrict litigation and the unique problems an MDL judge faces. Specifically, when handling seven MDLs, each containing thousands of individual cases, case management becomes of utmost importance. *See In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006) (emphasizing the "enormous" task of an MDL court in "figur[ing] out a way to move thousands of cases toward resolution on the merits while at the same time respecting their individuality"). I must define rules for discovery and then strictly adhere to those rules, with the purpose of ensuring that pretrial litigation flows as smoothly and efficiently as possible. *See id.* at 1232 ("[T]he district judge must establish schedules with firm cutoff dates if the coordinated cases are to move in a diligent fashion toward resolution by motion, settlement, or trial."); *see also* Fed. R. Civ. P. 1 (stating that the Federal Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding"). In turn, counsel must collaborate with the court "in fashioning workable programmatic procedures" and cooperate with these procedures thereafter. *Id.* at 1231–32. Pretrial orders—and the parties' compliance with those orders and the deadlines set forth therein—"are the engine that drives disposition on the merits." *Id.* at 1232. And a "willingness to

resort to sanctions" in the event of noncompliance can ensure that the engine remains in tune, resulting in better administration of the vehicle of multidistrict litigation. *Id.*; *see also Freeman v. Wyeth*, 764 F.3d 806, 810 (8th Cir. 2014) ("The MDL judge must be given 'greater discretion' to create and enforce deadlines in order to administrate the litigation effectively. This necessarily includes the power to dismiss cases where litigants do not follow the court's orders.").

### III. Discussion

Here, the plaintiff has failed to submit a verified PFS by the required deadline and has failed to show cause as required by court order. Applying the *Wilson* factors to these facts and bearing in mind the unique context of multidistrict litigation, I conclude that dismissal with prejudice is warranted.

The first factor, bad faith, is difficult to ascertain, given that plaintiff's counsel has not had recent contact with the plaintiff's next of kin. But the docketed return receipts indicate that Mr. Mendoza has received at least one of this court's orders by mail and has nevertheless failed to respond as directed. (Return Receipt [Docket 17] (indicating that Mr. Mendoza received this court's order that he respond to plaintiff's counsel's motion to withdraw)). Although this failure does not appear to be callous, it was in blatant and full knowledge of court order. I thus weigh the first factor against the plaintiff. *See In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007) ("While not contumacious, perhaps, this is a blatant disregard for the deadlines and procedure imposed by the court, [and t]herefore, we conclude that the [plaintiffs] did not act in good faith.").

The second factor, prejudice caused by noncompliance, also leans toward dismissal. Without a verified PFS or any indication that Mr. Mendoza wishes to move forward with his late wife's case, Bard is "unable to mount its defense because it [has] no information about the

plaintiff or the plaintiff's injuries outside the allegations of the complaint." *In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1234 (9th Cir. 2006). Furthermore, because Bard has had to divert its attention away from timely plaintiffs and onto Ms. Mendoza's case, the delay has unfairly impacted the progress of the remaining plaintiffs in Wave 3, not to mention the thousands of other plaintiffs in MDL 2187.

The adverse effect on the management of the MDL as a whole segues to the third factor, the need to deter this sort of noncompliance. When parties fail to comply with deadlines provided in pretrial orders and essentially abandon their cases, a domino effect develops, resulting in the disruption of the MDL as a whole. The purpose of an MDL is to "assure uniform and expeditious treatment" of the cases therein, H.R. Rep. No. 1130, at 1 (1967), *reprinted in* 1968 U.S.C.C.A.N. 1898, 1901, and the disorder caused by a party's failure to comply with pretrial orders and discovery deadlines must be deterred.

Finally, turning to the last factor, the court has already applied lesser sanctions to no avail. Mr. Mendoza had a chance to show cause as to why the court should not dismiss his late wife's case for noncompliance with discovery, and the court cautioned that failure to do so would result in dismissal with prejudice upon motion by defendant. Yet, neither Mr. Mendoza nor any other next of kin appeared before the court to show cause on behalf of Ms. Mendoza.

In sum, the *Wilson* factors demonstrate that dismissal with prejudice is a proper and just sanction. Bard's Motion to Dismiss [Docket 25] is accordingly **GRANTED**.

## IV.    Conclusion

It is **ORDERED** that Bard's Motion to Dismiss [Docket 25] is **GRANTED**. It is further **ORDERED** that this case be **DISMISSED with prejudice** and **STRICKEN** from the court's

docket. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 8, 2015

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE